**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4915-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ZARIK ROSE,

    Defendant-Appellant.

_____

          Submitted October 24, 2018 – Decided April 24, 2019

          Before Judges Koblitz, Ostrer and Currier.

          On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 06-04-0377.

          Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

          Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Staci L. Scheetz, Assistant Prosecutor, on the brief).

          Appellant filed pro se supplemental briefs.

The opinion of the court was delivered by

OSTRER, J.A.D.

In this post-conviction relief (PCR) appeal, one novel issue merits in-depth discussion: may a defendant waive a previously asserted right to represent himself by acquiescing in his representation by counsel. Federal courts have addressed the issue, but our state courts have not. We conclude that a defendant, by his or her conduct, may waive the right of self-representation. But, whether a defendant has done so is a fact question. To conclude that a defendant has waived an asserted right of self-representation, the evidence must clearly demonstrate that the defendant intentionally relinquished the known right of self-representation. We remand for an evidentiary hearing so the court can determine whether defendant waived his right.

The trial court also rejected multiple claims of ineffective assistance of counsel, concluding they failed to meet the two-pronged Strickland test of non-professional assistance and prejudice. See Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). We address those below, following our discussion of the self-representation issue, and conclude that one of those claims also warrants exploration at an evidentiary hearing. In all other respects, we affirm the trial court's denial of PCR.

A-4915-16T2

I.

A.

After a 2007 trial, a jury found defendant guilty, as an accomplice, of purposeful murder of Charles Mosley. The State's case rested largely on the testimony of two criminal offenders. Larry Graves confessed to killing Mosley, but testified that he did so at defendant's request, made when they were both in jail together. Graves said he killed Mosley to prevent him from testifying against defendant in an upcoming trial for attempted murder of Mosley. The other witness was Salvatore Puglia, a drug dealer, who elicited statements from defendant about the homicide in a covertly recorded conversation. We assume the reader's familiarity with these and other underlying facts, which the Supreme Court reviewed in detail in affirming defendant's conviction on direct appeal. State v. Rose, 206 N.J. 141, 146-52 (2011). We focus here on defendant's assertion of the right to represent himself.

Defendant declared he wanted to "go pro se" after he unsuccessfully sought to replace his assigned counsel. In a June 14, 2006 letter to Judge Walter L. Marshall, Jr., defendant asked that his attorney "be removed from [his] case" because the attorney had not met with him or requested information about witnesses. Eight days later, having "not heard anything" from the court or

counsel, defendant wrote again, asking the court "to appoint another attorney to represent" him.

At a bail review hearing on July 24, 2006 before a different judge, defendant renewed his complaint about counsel. The judge informed defendant that he did not have a right to choose his appointed attorney. Defendant then asserted his right to represent himself. The court deferred a response, insisting that defendant present his request in writing.

The colloquy between the court and defendant was as follows:

> Mr. Rose: For the record – so it's on the record, I don't want [my defense counsel] on my case.
>
> The Court: Sir, –
>
> Mr. Rose: He hasn't interviewed a witness. I haven't had one witness interviewed. I haven't had an interviewer come to see me. He could have had people that could have cleared my name already, –
>
> The Court: Okay. Sir – Sir
>
> Mr. Rose: – and we still haven't done that. I don't want him on my case.
>
> The Court: Sir
>
> Mr. Rose: That's all I'm asking, your honor, that you remove him from my case. I'll go pro se. I'll put in a motion to go pro se. I'm not going to court with him purposely trying to sell me out.

4

. . . .

The Court: Okay. Let me suggest to you, sir, that you –

Mr. Rose: I understand.

The Court: Notwithstanding the application which you've made verbally. You've not made it in writing yet, which will be considered by the Court if you want to do that, to proceed pro se, the Court would, in any event, appoint an attorney to be your advisor.

Mr. Rose: Yes, sir. Okay.

Two days later, defendant presented his request in a letter to the judge.

The State does not dispute that defendant sent the following letter:

> Your Honor please except this letter in Lieu of a formal Motion, to dismiss . . . my Defense Counsel, and to proceed to Trial Pro-se.
>
> Your Honor on July 24, 2006, I made a Verbal Application before you to dismiss . . . my Defense Counsel, and to Proceed to Trial Pro-Se. [Defense counsel] said, I must make my request in writing. So im [sic] making my Application to the court, with a copy being sent to [defense counsel], to remove him as my Defense Counsel, and to Proceed to trial Pro-se. Defense Counsel has continued to ignore my request for Discovery, to interview witnesses, or come to my County Jail to meet with me, to discuss the status of my up coming trial.
>
> So please allow this letter to act as a formal motion to dismiss . . . my Defense Counsel and to proceed to trial pro-se.

There is no record that the judge responded, or forwarded the letter to Judge Marshall, who later presided over the trial. Defendant did not thereafter renew his request to represent himself. In a certification supporting his PCR petition, defendant asserted, "The Court and trial counsel failed to address my Motion and it was my understanding that it was denied." He contended he was entitled to a new trial because the court deprived him of his right to represent himself.

The PCR court denied defendant's petition without an evidentiary hearing stating, "Petitioner chose to move forward with trial while being represented by trial counsel, and Petitioner was convicted by the jury. Petitioner cannot now argue that his right to self-representation was violated because he was not pleased with the outcome of the trial."

In his appeal, defendant contends, "The PCR Court erred where it did not determine whether the trial court erroneously required defendant's waiver of counsel request to be made in writing." In a pro se reply brief, defendant argues:

> Defendant Zarik Rose, clearly and unequivocally
> notified the trial court and trial counsel that he desired
> to proceed pro se, however the court refused to hold a
> Faretta hearing and refused to allow him to proceed
> pro se, thereby violating his constitutional right to
> counsel and his rights to due process of law and a fair
> trial; if the court finds this issue should have been
> raised on direct appeal, then direct appeal and PCR

6

> counsels rendered ineffective assistance of counsel
> was ineffective [sic].

The State argues that defendant's argument "is not cognizable via post-conviction relief," noting that PCR is "neither a substitute for direct appeal, R. 3:22-3, nor an opportunity to relitigate cases already decided on the merits, R. 3:22-5." (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). The State also contends defendant never clearly and unequivocally asserted the right to represent himself. Thus, as we understand the argument, we have no cause to reach the issue of the right's waiver.

We review de novo the PCR court's factual findings without an evidentiary hearing. State v. Harris, 181 N.J. 391, 421 (2004). We also owe no deference to the trial court's conclusions of law. Ibid. "A defendant shall be entitled to an evidentiary hearing" before a PCR court if he or she establishes a "prima facie case in support of post-conviction relief," there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and a "hearing is necessary to resolve the claims for relief." R. 3:22-10.

## B.

As a threshold matter, we reject the State's contention that defendant's claim that he was denied his self-representation right is procedurally barred. A defendant may seek PCR upon a showing of a "[s]ubstantial denial in the

7

conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." R. 3:22-2(a). As a corollary to the right to counsel, the right to represent oneself enjoys constitutional protection. See Faretta v. California, 422 U.S. 806, 813-14, 821 (1975); State v. King, 210 N.J. 2, 16 (2012).

As a procedural matter, defendant's claim that his right was denied stands on similar footing with a claim of ineffective assistance of counsel. "Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." Preciose, 129 N.J. at 460. Likewise, the issue whether defendant waived by conduct his right to represent himself requires, in this case, a review of evidence outside the trial record. That may include evidence of discussions between defendant and his appointed counsel. Those discussions may reflect how defendant perceived the court's non-response to his self-representation request, and whether defendant intentionally relinquished it thereafter. Consequently, defendant's claim is appropriate for PCR review because it could not have been fully considered on direct appeal.

In any event, the court shall not bar a defendant's claim in a first PCR proceeding if it "would result in fundamental injustice." R. 3:22-4(a)(2). In

State v. Coon, 314 N.J. Super. 426 (App. Div. 1998), the defendant contended in a petition for PCR that he waived his right to appellate counsel without the required searching inquiry to confirm whether he did so knowingly and voluntarily. Id. at 431-33. Even if defendant could have raised the claim earlier, we declined to bar it because doing so "would result in a fundamental injustice." Id. at 437 (quoting R. 3:22-4(b)). On the same basis, we decline to bar defendant's claim that the trial court denied him his right of self-representation.[1]

## C.

Our substantive analysis involves consideration of two questions: (1) did defendant effectively assert his right to represent himself; and (2) if so, did he subsequently waive that right by conduct or acquiescence. To address the first question, we review well-settled principles regarding self-representation.

The United States Supreme Court held in Faretta that a defendant has a Sixth Amendment right to represent oneself at trial, so long as the defendant has "voluntarily and intelligently" waived the right to counsel. 422 U.S. at 807; see

---

[1] Given our view of the procedural bar, we need not address defendant's alternative claim that his appellate attorney was ineffective by failing to raise on direct appeal the deprivation of his right to self-represent. But see Orazio v. Dugger, 876 F.2d 1508, 1513 (11th Cir. 1989) (holding that the failure to raise a Faretta claim on direct appeal constituted ineffective assistance of counsel).

also Godinez v. Moran, 509 U.S. 389, 400 (1993) (stating the waiver must be "knowing and voluntary"); State v. Crisafi, 128 N.J. 499, 509 (1992) (stating the waiver must be made "knowingly and intelligently"); State v. Thomas, 362 N.J. Super. 229, 243 (App. Div. 2003) (stating the waiver must be "voluntary, knowing and intelligent"); Wayne R. LaFave et al., 3 Criminal Procedure § 11.3(a), at 775 and n.7 (4th ed. 2015) (stating that the waiver must be "knowing, intelligent, and voluntary" and that various similar formulations do not mean to suggest "a difference in content"); cf. State v. Wessells, 209 N.J. 395, 402 (2012) (stating that the waiver of right to counsel by a suspect in custody must be "knowing, voluntary and intelligent").

Mindful that defendants are usually better off with counsel than without, the Court has required that a defendant "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 434 (citation omitted); see also State v. Reddish, 181 N.J. 553, 592 (2004). The court "should 'indulge [in] every reasonable presumption against waiver.'" King, 210 N.J. at 19 (quoting State v. Gallagher, 274 N.J. Super. 285, 295 (App. Div. 1994)); see also Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

A two-step process has emerged. First, a defendant must assert the right of self-representation "in a timely fashion" so as not to "disrupt the criminal calendar, or a trial in progress." State v. Buhl, 269 N.J. Super. 344, 362 (App. Div. 1994). The request must be made "clearly and unequivocally." See Faretta, 422 U.S. at 835 (upholding waiver of counsel where defendant "clearly and unequivocally declared . . . that he wanted to represent himself" and did so voluntarily and intelligently); State v. Figueroa, 186 N.J. 589, 593 and n.1 (2006); State v. Harris, 384 N.J. Super. 29, 57 (App. Div. 2006). In making the request, a defendant need not "recite some talismanic formula." Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir. 1986). Whether "orally or in writing," a defendant need only make the request "unambiguously . . . so that no reasonable person can say that the request was not made." Ibid.

Second, once a defendant asserts the self-representation right, the trial court must ascertain, in a so-called "Faretta hearing," whether the waiver is indeed knowing, voluntary, and intelligent after a searching inquiry that involves advising the defendant of the risks and pitfalls of self-representation. State v. DuBois, 189 N.J. 454, 468-69 (2007); Figueroa, 186 N.J. at 593;

11

Reddish, 181 N.J. at 593-95 (describing the inquiry); Crisafi, 128 N.J. at 510-12 (describing the inquiry). [2]

Following the hearing, the court generally must permit the defendant to proceed pro se if it finds on the record that the defendant has knowingly, voluntarily, and intelligently waived the right to counsel and decided instead to

---

[2] The Court described the required inquiry as follows:

> Taken together, then, the Crisafi/Reddish inquiry now requires the trial court to inform a defendant asserting a right to self-representation of (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that the lack of knowledge of the law may impair defendant's ability to defend himself or herself; (5) the impact that the dual role of counsel and defendant may have; (6) the reality that it would be unwise not to accept the assistance of counsel; (7) the need for an open-ended discussion so that the defendant may express an understanding in his or her own words; (8) the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and (9) the ramifications that self-representation will have on the right to remain silent and the privilege against self-incrimination.
>
> [DuBois, 189 N.J. at 468-69.]

proceed pro se. <u>Figueroa</u>, 186 N.J. at 593. "[T]he ultimate focus must be on the defendant's actual understanding of the waiver of counsel." <u>Crisafi</u>, 128 N.J. at 512. In rare cases, a court's failure to engage in the necessary colloquy may be excused. <u>Id.</u> at 512-513 (finding waiver of counsel knowing and intelligent despite inadequacy of colloquy).

However, the right of self-representation is not "absolute." <u>Reddish</u>, 181 N.J. at 587. In exceptional cases, the court may deny self-representation if it would obstruct the progress of a case, or, it would interfere with "the integrity of the State's interest in fair trials" and the courts' ability "to ensure that their judgments meet the high level of reliability demanded by the Constitution." <u>Reddish</u>, 181 N.J. at 587;[3] <u>see also</u> <u>State v. McNeil</u>, 405 N.J. Super. 39, 52 (App. Div. 2009) (affirming finding that a mentally ill defendant lacked competence to represent himself though he was competent to stand trial) (citing <u>Indiana v. Edwards</u>, 554 U.S. 164, 176-78 (2008)); LaFave et al., § 11.5(d), at 865-82 (discussing grounds for denying self-representation, including misconduct and lack of competence to self-represent).

---

[3] Although <u>Reddish</u> applied this standard to a capital case, the Court has invoked this standard in other cases. <u>See, e.g.</u>, <u>King</u>, 210 N.J. at 18 (robbery case).

Defendant's oral and written requests to discharge his appointed counsel and to represent himself were timely – as he made them well in advance of trial. They were also clear and unequivocal. The record belies the State's contention that defendant's request was "vague." Once the court summarily denied defendant's request for substitute counsel, defendant said, without qualification, that he wanted to represent himself and he refused to go to court with someone he believed would "sell [him] out." Rather than hold a Faretta hearing, the trial court deflected defendant's oral request by inappropriately requiring defendant to submit his request in writing. See Buhl v. Cooksey, 233 F.3d 783, 792 (3d Cir. 2000) (stating that the law "does not require that [the] request be written or in the form of a formal motion"). Defendant responded with an unambiguous request to represent himself, but the court ignored the letter.[4]

In response to defendant's request, the court was obliged to conduct a Faretta hearing. A defendant is entitled to a new trial when a court denies a

---

[4] While the court may have viewed defendant's oral request as conditioned on his inability to get replacement counsel, his written request was unconditional. It criticized his appointed counsel, but did not request a substitute. In any event, "[a] request to proceed pro se is not equivocal because it is an alternative position, advanced as a fall-back to a primary request for different counsel." Johnstone v. Kelly, 808 F.2d 214, 216 n.2 (2d Cir. 1986); see also United States v. Hernandez, 203 F.3d 614, 621-22 (9th Cir. 2000) (finding request so conditioned unequivocal).

defendant the right to self-representation without determining whether a timely

and unequivocal request was knowingly, voluntarily, and intelligently made.

> [I]f the court fails to fulfill its obligation to inform the
> defendant [of the nature of the charges, the possible
> penalties and the dangers of self-representation] and
> then denies his request to represent himself, it violates
> the defendant's Sixth Amendment right of self-
> representation. . . .  Were the rule otherwise, the Sixth
> Amendment right to self-representation would be
> severely weakened. . . .  If the judge failed to perform
> his duties properly – if he failed, for example, to
> explain adequately the dangers of self-representation
> and the consequences the defendant faced – the
> defendant would be penalized: his right to self-
> representation would be forfeited by virtue of the
> court's error.
>
> [United States v. Hernandez, 203 F.3d 614, 625 (9th
> Cir. 2000) (reversing conviction based on wrongful
> denial of right of self-representation).]

See also Buhl, 233 F.3d at 800, 806-07 (reversing conviction where court denied

a timely and unequivocal request on the ground that the defendant was motivated

by his dissatisfaction with counsel); Figueroa, 186 N.J. at 596.

The failure to rule on a defendant's request has been treated the same as

an explicit denial.  In Moore v. Haviland, 531 F.3d 393, 401-04 (6th Cir. 2008),

the trial court declined to rule on the defendant's self-representation request and

directed defense counsel to call his next witness.  The Court of Appeals granted

habeas corpus relief, stating that "[b]y failing to rule on [the defendant's]

unequivocal requests to proceed pro se, the trial court deprived him of his Sixth Amendment right to self-representation." Id. at 404.

Violation of the right is not "amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984); see also King, 210 N.J. at 22 (reversing conviction where trial court erred in denying defendant's motion to represent himself).

Although the record does not clearly demonstrate that defendant's assertion of the right to represent himself was knowingly, voluntarily, and intelligently made, that lack of clarity results from the trial court's failure to engage in the searching inquiry our case law requires. The trial court did not explicitly deny defendant's request. Nonetheless, as in Hernandez, defendant should not be "penalized" for the court's error in failing to address defendant's request in a Faretta hearing. Unless defendant's failure to persist in his request constitutes a waiver of his self-representation right, the court's failure to act is tantamount to a denial, inasmuch as defendant could only proceed pro se with the court's affirmative approval. See Haviland, 531 F.3d at 404. Therefore, we turn next to the issue of waiver.

16

D.

Waiver of a constitutional right, as with waiver generally, requires proof of the "intentional relinquishment or abandonment of a known right or privilege." Zerbst, 304 U.S. at 464. Whether a defendant has waived the right to counsel "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Ibid. We conclude this standard also applies to the waiver of the right to self-representation, once asserted. Furthermore, "'waiver of constitutional rights in any context must, at the very least, be clear.'" Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 505-06 (2012) (quoting Fuentes v. Shevin, 407 U.S. 67, 95 (1972)).

We recognize that, although the right of self-representation is a "corollary" to the right to counsel, the rights are treated differently. "While the right to counsel is in force until waived, the right of self-representation does not attach until asserted." Brown v. Wainwright, 665 F.2d 607, 610 (5th Cir. 1982) (en banc). A defendant is routinely advised of the right to counsel at the outset of criminal proceedings. See R. 3:4-2(c)(3) (requiring a judge, at the first appearance of a defendant charged with an indictable offense, to inform the defendant of the right to retain counsel, and the right to appointed counsel if

17

indigent).  As we have discussed above, before a court may properly accept a defendant's waiver of the right to counsel, the court must engage in a searching inquiry after informing the defendant of the nature of the right and the consequences of waiver.

By contrast, our rules do not require the court to inform a defendant of his or her right to proceed without counsel, and we are unaware of any New Jersey case that recognizes such an obligation.  Nor must a court engage in a colloquy with a defendant about the risks and pitfalls of eschewing the right of self-representation before a defendant may proceed with counsel after asserting the right to proceed pro se.  A defendant may also forego the right of self-representation without knowing it exists.  In such cases, it would appear inappropriate to say that such a defendant waived that right, that is, intentionally relinquished a known right.[5]

---

[5] Some rights can be waived by simple inaction.  For example, following "the majority view," our Court held that "a defendant who does not affirmatively request the right to participate in voir dire sidebars should be considered to have waived the right," although the Court did not predicate such waiver on proof of knowledge of the right to be present.  State v. W.A., 184 N.J. 45, 63 (2005).  In other contexts, however, the court has been "unwilling to equate [a] defendant's silence with a knowing waiver of a constitutional right."  State v. Suazo, 133 N.J. 315, 323 (1993) (involving refusal to object to search).

Other courts have held that a trial court is not obliged to inform a defendant of the right of self-representation. See LaFave et al., § 11.5(b), at 847-48 and n.31 (citing cases). One court has explained that the two rights are treated differently because the right to counsel is essential to the right to a fair trial, while the right to self-representation "is grounded more in considerations of free choice than in fair trial concerns." United States v. Martin, 25 F.3d 293, 295 (6th Cir. 1994). The Martin court cites Schneckloth v. Bustamonte, 412 U.S. 218, 237 (1973) for the proposition that, "[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." Schneckloth identifies the right to counsel, confrontation, a jury trial, a speedy trial, and freedom from double-jeopardy. Id. at 237-38.

Some federal courts have held that even the right to counsel may be "waive[d] by conduct." United States v. Bauer, 956 F.2d 693, 695 (7th Cir. 1992). The Seventh Circuit in Bauer held that a defendant waived his right to counsel when he insisted upon appointed counsel but refused to provide financial information to demonstrate that he qualified, and refused to retain private counsel. However, the Third Circuit has stated, "'A waiver by conduct' requires that a defendant be warned about the consequences of his conduct,

including the risks of proceeding pro se." United States v. Goldberg, 67 F.3d 1092, 1101 (3d Cir. 1995). The Goldberg court reasoned that when a defendant neither asks nor intends to proceed pro se, but is compelled to do so because of his obstructive or uncooperative behavior, it is more accurate to say that the defendant has forfeited rather than waived the right. Ibid.

We are unaware of any New Jersey case in which a defendant was found to have waived by conduct the right of self-representation after assertion.[6] Yet, federal courts have found such waivers by conduct where the defendant did not press the issue in the face of judicial inaction or indecisiveness.

The federal courts do not require a defendant to persist in asserting the right to proceed pro se after a clear denial. See Orazio v. Dugger, 876 F.2d 1508, 1512-13 (11th Cir. 1989) (rejecting finding of waiver); Brown, 665 F.2d at 612 (stating that, to avoid a waiver, a defendant need not "continually renew his request to represent himself even after it is conclusively denied by the trial court"). However, absent a clear denial, some federal courts have deemed a defendant's inaction to be a waiver under the circumstances. "Once asserted . . . the right to self-representation may be waived through conduct indicating that

---

[6] A defendant may waive the issue of the denial of the right on appeal, by entering a non-conditional guilty plea. State v. Szemple, 332 N.J. Super. 322, 328-29 (App. Div. 2000).

one is vacillating on the issue or has abandoned one's request altogether." Wilson v. Walker, 204 F.3d 33, 37 (2d Cir. 2000) (quoting Williams v. Bartlett, 44 F.2d 95, 100 (2d Cir. 1994)).

The Second Circuit held that a defendant waived his self-representation right when his request was met with judicial equivocation, and he did not renew his request. Id. at 38. The court noted that defendant was motivated to make his request by his dissatisfaction with appointed counsel. There were two subsequent changes in attorneys and defendant expressed no dissatisfaction with new counsel and did not "reassert his desire to proceed pro se." Id. at 38-39. The court observed that the defendant's silence starkly contrasted with his willingness to assert other rights and to challenge the court. Ibid.

Other federal courts have reached similar conclusions. In Brown, the court affirmed the district court's denial, after an evidentiary hearing, of habeas corpus relief based on the denial of the right of self-representation. 665 F.2d at 612. The trial judge had deferred ruling on the defendant's motion to proceed pro se. Id. at 609. Defense counsel later informed the court that he and his client had resolved the difficulties that apparently prompted the defendant's request. Ibid. Defendant conceded that he told his attorney to "'stay on' as his

21

lawyer," but he argued he did so only after he considered his self-representation request denied.  Id. at 610.

The Fifth Circuit applied a relaxed standard to waiver of the self-representation right.  "The right of self-representation . . . is waived if not asserted, while the right to counsel is not."  Id. at 611.  From that premise, the court concluded, "Since the right of self-representation is waived more easily than the right to counsel at the outset, before assertion, it is reasonable to conclude it is more easily waived at a later point, after assertion."  Ibid.  "A waiver may be found if it reasonably appears to the court that [the] defendant has abandoned his initial request to represent himself."  Ibid.  The court acknowledged that "in some cases a personal dialogue between the court and defendant may be advisable."  Id. at 612.  But, it was unnecessary when "all circumstances indicate[d] [the] defendant ha[d] abandoned his request to conduct his own defense."  Ibid.

In Cain v. Peters, 972 F.2d 748 (7th Cir. 1992), the Seventh Circuit rejected a habeas corpus challenge to a state court finding that the defendant waived by conduct, or, in the Circuit's view, forfeited self-representation.  The defendant had expressed dissatisfaction with his attorney, stating "he had nothing to lose [in representing himself] because he was not 'getting adequate

representation'" from his appointed counsel. Id. at 749. The trial judge told the defendant that he was entitled to represent himself, but ordered a psychiatric examination. Ibid. That led the judge to appoint a new attorney for the defendant, who did not raise the issue of self-representation again.

The Circuit held that the defendant "had only to speak up." Id. at 750. The court assumed he did not because he got what he wanted, a different lawyer. Ibid.; see also United States v. Johnson, 223 F.3d 665, 669 (7th Cir. 2000) (concluding that "[t]he only plausible inference from the defendant's conduct is that he acquiesced in the denial by judicial inaction of his motion and thereby deliberately relinquished his right of self-representation"); Walker v. Phelps, 910 F.Supp.2d 734, 742-43 (D. Del. 2012) (finding that defendant abandoned his asserted self-representation right by acquiescing to counsel's representation).

Although our State Supreme Court has not addressed the issue, we are convinced the Court would find that a defendant may waive by conduct an asserted right of self-representation. In other contexts, a trial court may infer the waiver of a constitutional right by conduct. For example, a court may infer the "knowing waiver of the right to attend trial" by the defendant's absence, so long as the court has provided defendant "adequate notice of the date, time and place of trial and of the right to be present," and informed defendant of the

"consequences of the failure to appear." State v. Hudson, 119 N.J. 165, 179-80, 182 (1990); R. 3:16(b) (stating a defendant may waive the right to be present by "the defendant's conduct evidencing a knowing, voluntary and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence").

Although the right to self-representation may be waived by conduct, the conduct must clearly establish that the defendant intentionally relinquished a known right. See Mazdabrook, 210 N.J. at 505-06 (stating a waiver of a constitutional right must at least be clear). Even assuming differences between the right to counsel and the right of self-representation, once a defendant has clearly and unequivocally requested permission to proceed pro se, the right of self-representation should be treated more like the right to counsel. That is because once a defendant exercises the right of self-representation, it "must be scrupulously respected through all critical stages of his criminal prosecution and cannot be revoked without affirmative action by the defendant to rescind his waiver [of counsel] and reinstate his right to counsel." State v. Ayer, 834 A.2d 277, 289 (N.H. 2003).

Faretta requires the court to respect the defendant's invocation of the right. Even if a defendant is unaware of a right to self-representation, once a defendant requests to proceed pro se, and the court takes the issue under advisement, a defendant may be presumed to know at least that there was a possibility he could represent oneself. Waiver should require proof that he or she intentionally relinquished that known right. It may arise from the defendant's acceptance of the court's inaction in refusing to address such a request. However, mere acquiescence through silence in representation by counsel is not proof enough.

We acknowledge that in none of the federal waiver-by-conduct cases cited did the court expressly address whether the defendant's conduct evidenced an intentional relinquishment of a known right. However, we are persuaded that our State Supreme Court would apply the test, consistent with Johnson v. Zerbst, as well as the general principle that we must "'indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . 'do not presume acquiescence in the loss of fundamental rights.'" State v. Buonadonna, 122 N.J. 22, 35 (1991) (quoting Zerbst, 304 U.S. at 464). In Schneckloth, the Supreme Court held that proof of knowledge of the right to refuse consent was not essential to prove voluntary consent to a search. 412 U.S. at 248-49. In contrast to the Sixth Circuit's approach in Martin, our State Supreme Court has

declined to apply <u>Schneckloth</u>'s reasoning to the New Jersey Constitution. Our State Supreme Court held that under Art. I. par. 7, voluntary consent to a search requires a knowing and intelligent waiver, which includes "knowledge of the right to refuse consent." <u>State v. Johnson</u>, 68 N.J. 348, 353-54 (1975).

We find persuasive the reasoning of the several dissenters in <u>Brown</u>, who would have applied the <u>Johnson v. Zerbst</u> principle requiring proof of an intentional relinquishment of a known right. <u>Brown</u>, 665 F.2d at 613 (Hill, J., dissenting). The dissenters noted that "[s]elf-representation, as a constitutional right, is valuable per se and should not be held lightly waived once it attaches." <u>Ibid.</u>[7]

Also persuasive is the Ninth Circuit's rejection of the government's argument that a defendant waived his motion for substitute counsel because he did not reassert it after the court inadvertently failed to rule on it. <u>Schell v. Witek</u>, 218 F.3d 1017 (9th Cir. 2000) (en banc). The defendant stated that his attorney told him that the request must have been denied "because she was still his attorney." <u>Id.</u> at 1021. The Court of Appeals held that the defendant "did

---

[7] The dissenters went on to contend that once the self-representation right attaches, "the defendant ought not be found to have waived it until and unless there is a dialogue between the judge and the defendant showing a knowing and intelligent voluntary waiver." <u>Ibid.</u> As we accept the possibility of waiver by conduct, we conclude that a dialogue, although preferred, is not essential.

26

not voluntarily, knowingly and intelligently waive [his] motion that he reasonably believed was denied." Id. at 1024. The same test should apply to a case where a defendant does not reassert a request to proceed pro se after the trial court inadvertently failed to rule, especially if the defendant understood that the request was denied.

The critical question here is whether defendant clearly intended to relinquish a known right. The court must consider the "facts and circumstances surrounding th[e] case, including the background, experience, and conduct of the accused." Zerbst, 304 U.S. at 464. As in Brown, 665 F.2d at 616, we conclude that an evidentiary hearing is necessary to explore communications between counsel and defendant, and other circumstances that would reflect defendant's knowledge and intent.

Defendant may have resolved his differences with his attorney, and decided to abandon his request to proceed pro se. In Brown, the defense attorney's testimony that he had patched things up with the defendant was probative of the defendant's intent to abandon his request. However, unlike in Cain and Walker, defendant here did not receive a new appointed attorney, which might have obviated defendant's motivation to proceed pro se.

27

Alternatively, defendant may have reasonably understood the court's inaction to be tantamount to a denial. Indeed, his attorney may have advised him to consider it as such, as in Schell. If defendant did not intend to relinquish his request, it may well have been prudent for him to inquire whether the court intended to respond to his letter. However, we are not prepared to hold that his failure to inquire is conclusive proof of waiver. It takes some measure of temerity even for practicing attorneys to nudge a judge who has reserved decision on a motion. Here, the court insisted that defendant submit his request to proceed pro se in writing. If defendant reasonably believed his request was denied, he was not obliged to continually renew it. Cf. Orazio, 876 F.2d at 1512.

Defendant's reasonable interpretation of the court's inaction is a fact question. We therefore remand for an evidentiary hearing and a determination whether defendant waived his right to proceed pro se. Unless the court finds that defendant waived his right, the court's failure to address defendant's request is a structural error that entitles defendant to a new trial.

We conclude by observing that trial courts must timely address a defendant's expressed desire to proceed pro se. While we have no reason to believe the court in this case deliberately ignored defendant's request in the hope that he would drop the matter, the court failed to promptly address defendant's

request.  It serves both the interests of justice and judicial economy to address

Faretta issues promptly when they arise.

II.

Defendant presents multiple other claims of ineffective assistance of trial

counsel.  In his counseled brief, he contends:

> POINT ONE
>
> DEFENDANT'S TRIAL ATTORNEY WAS
> CONSTITUTIONALLY INEFFECTIVE WHERE HE
> FAILED TO FORMULATE A DEFENSE
> STRATEGY INVOLVING THIRD PARTY GUILT
> AND WHERE THE RECORD REVEALED THAT
> HE WAS NOT FULLY FAMILIAR WITH THE
> MATERIAL FACTS OF THE CASE.
>
> POINT TWO
>
> THE PCR COURT ERRED WHERE IT FOUND
> THAT THE DEFENDANT DID NOT ESTABLISH A
> PRIMA FACIE CASE WHICH WARRANTED AN
> EVIDENTIARY HEARING.
>
> POINT THREE
>
> THE PCR COURT ERRED WHERE IT DID NOT
> DETERMINE WHETHER THE TRIAL COURT
> ERRONEOUSLY REQUIRED DEFENDANT'S
> WAIVER OF COUNSEL REQUEST TO BE MADE
> IN WRITING.

A-4915-16T2

POINT FOUR

THE PCR COURT ERRED WHERE IT DID NOT
DECIDE DEFENDANTS REQUEST FOR RELIEF
BASED ON THE TRIAL COURT'S ADMISSION OF
THE GUILTY PLEA OF THE STATE'S CHIEF
WITNESS, A PERSON IT ALLEGED DEFENDANT
COAXED INTO MURDERING THE VICTIM.

POINT FIVE

THE PCR COURT'S REJECTION OF THE
DEFENDANT'S PRO SE POST-TRIAL MOTION
REGARDING JURY MISCONDUCT FOR LACK OF
GOOD CAUSE UNDER R. 1:16-1, WHICH THE
TRIAL COURT DID NOT ADDRESS, WAS
HARMFUL TO THE INTEGRITY OF THE JURY
PROCESS.

Rose added the following arguments in his pro se supplemental brief:

POINT ONE

THE PCR COURT ERRED IN DENYING
DEFENDANT'S PETITION BECAUSE THE TRIAL
COURT ERRED IN NOT SUA SPONTE
INSTRUCTING THE JURY ON AGGRAVATED
MANSLAUGHTER, MANSLAUGHTER AND
PASSION-PROVOCATION AS A LESSER-
INCLUDED OFFENSE TO MURDER THEREBY
DEPRIVING DEFENDANT OF THE RIGHT TO A
FAIR TRIAL.

POINT TWO

THE PCR COURT ERRED IN DENYING
DEFENDANT'S PETITION BECAUSE TRIAL
COUNSEL PROVIDED INEFFECTIVE

ASSISTANCE OF COUNSEL THEREBY
PREJUDICING DEFENDANT.  IN THE
ALTERNATIVE, BECAUSE DEFENDANT
PRESENTED AT LEAST PRIMA FACIE PROOF
THAT HE HAD BEEN DEPRIVED OF THE
EFFECTIVE ASSISTANCE OF TRIAL COUNSEL,
THE PCR COURT ERRED BY FAILING TO HOLD
A FULL EVIDENTIARY HEARING.

POINT THREE

TRIAL COUNSEL WAS INEFFECTIVE WHEN HE
FAILED TO PROPERLY CROSS-EXAMINE
STATE'S WITNESS SALVATORE PUGLIA.

POINT FOUR

CUMULATIVE ERRORS BY COUNSEL
AMOUNTED TO INEFFECTIVE ASSISTANCE OF
COUNSEL AND THE DENIAL OF A FAIR TRIAL.

POINT FIVE

THE PCR COURT ERRED IN FAILING TO
CONDUCT A FULL EVIDENTIARY HEARING ON
DEFENDANT'S CLAIMS.

With respect to these points, we affirm the PCR court's denial of relief substantially for the reasons set forth in its extensive written opinion, with one exception.  We remand for an evidentiary hearing on defendant's claim that his trial counsel was ineffective because he failed to call several witnesses, about whom he was aware before trial, to undermine Graves's credibility and the reason he confronted Mosley.

31

These witnesses contended, in certifications, that Graves knew Mosley before the homicide; Graves discussed robbing Mosley; and Graves exonerated defendant. One witness contended in a March 2006 letter to defendant before trial that Graves told him that defendant was not involved in the homicide. Rather, Graves admitted that he used to get high with Mosley; Mosley caught him during an attempted burglary; they fought; Graves killed Mosley; and then stole $3000 to $4000 from Mosley.

Another potential witness, a former employee of Mosley, stated in a certification written in 2007, after defendant's trial, that he tried to inform trial counsel that he saw Graves at Mosley's property many times, but counsel refused to speak to him. The witness said Graves once worked part-time for Mosley; and the last time he saw the two men, they got into a dispute in which Graves claimed that Mosley owed him money; and he conveyed this information to prosecutor's office detectives.

Defendant's sister certified in 2013 that she advised trial counsel in court that Graves was lying about not knowing Mosley; she lived near Mosley and saw Graves and him together numerous times. The sister's partner also certified in 2013 that he too saw Mosley and Graves together and dispatched defendant's sister to tell trial counsel he was prepared to testify. A fifth witness told a public

defender's office investigator two years before trial that he went to Mosley's home with Graves on three or four occasions where they would obtain "drugs, alcohol and women for Mosley." This witness said that Graves would bring up the idea of robbing Mosley because he kept large amounts of cash in his home.[8]

These witnesses would have provided an independent motive for Graves to enter Mosley's home and to commit the homicide. It would also undermine Graves's credibility, which was already subject to challenge based on his inconsistent statements to police and his criminal record. Graves said he did not know Mosley before the incident.

The PCR court held that trial counsel was not deficient in failing to present these witnesses because the testimony would have been at odds with the defense strategy. The court noted that the trial strategy, as argued on appeal, was to persuade the jury that defendant "merely asked Graves to try to persuade Mosley to drop the [attempted murder] charges against him; that Graves had intended to do nothing more, but had killed Mosley in self-defense when Mosley had attacked him . . . ." Rose, 206 N.J. at 152. This strategy involved asking the

---

[8] It is unclear whether defendant's trial counsel represented defendant in 2005 or that he reviewed the investigator's memorandum about the interview before trial.

jury to credit Graves's first statement to law enforcement, and not his second statement or his trial testimony.

To demonstrate that he was deprived of his constitutional right to effective assistance of counsel, defendant must satisfy the two-part Strickland test by demonstrating that (1) his trial counsel was deficient and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. To satisfy the second prong, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

As for the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "[D]efendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

We recognize that "[d]etermining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront" based on a variety of factors, including the witnesses' likely testimony, their credibility, and their impact on other witnesses' testimony. State v. Arthur, 184

N.J. 307, 320-21 (2005). However, strategy must not be confused with inattention. LaFave et al., § 11.10(c). "[S]trategic choice made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," but "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.

"An ineffective assistance of counsel claim may occur when counsel fails to conduct an adequate pre-trial investigation." State v. Porter, 216 N.J. 343, 352, 357 (2013) (remanding for an evidentiary hearing where the defendant alleged his trial counsel failed to investigate an alibi defense); see also Wiggins v. Smith, 539 U.S. 510, 534-36 (2003) (noting that where counsel failed to discover and present mitigating evidence regarding defendant's history, counsel was "not in a position to make a reasonable strategic choice" during sentencing); Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006) (holding that trial strategy that was "uninformed" by pretrial investigation was not entitled to a presumption of deference).

The record does not reflect that trial counsel ever interviewed the witnesses, or investigated their susceptibility to challenge. If those witnesses

could credibly testify that Graves knew Mosley and Graves acted on his own, it is unclear why defense counsel would choose not to call them, and instead only ask the jury to credit Graves's initial statement, which still implicated defendant in a scheme with Graves – albeit not as serious as the actual one Graves described at trial. Further challenging Graves's credibility would move the jury to question any and all of the versions of events presented by Graves.

We shall not defer to a strategy that was uninformed by a reasonable investigation. If trial counsel's strategy was based on inattention or an inadequate investigation, then counsel performed deficiently. "Whether a counsel's action or inaction was based on a strategic choice is a factual question." LaFave et al., § 11.10(c), at 1133. The issue should be explored at an evidentiary hearing.

Defendant has also presented a prima facie case of prejudice that warrants a hearing. "In addressing an ineffective assistance claim based on a counsel's failure to call an absent witness [or witnesses], a PCR court must unavoidably consider whether the absent witness's testimony would address a significant fact in the case, and assess the absent witness's credibility." State v. L.A., 433 N.J. Super. 1, 15 (App. Div. 2013). However, the absent witnesses' credibility is not the sole criterion in assessing the prejudice prong. Rather, "it is a factor in the

court's determination whether there is a reasonable probability that, but for the attorney's failure to call the witness, the result would have been different – that is, there would have been reasonable doubt about the defendant's guilt." Id. at 15-16. The court should consider "the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses" and "the strength of the evidence actually presented by the prosecution." Id. at 16-17 (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996)).

The PCR court must assess whether the uncalled witnesses may have raised reasonable doubt about the truthfulness of Graves's testimony that he killed Mosley at defendant's behest. The testimony would not be cumulative, nor would it pertain to insignificant issues. The testimony would provide a reason for Graves's presence in Mosley's home other than to do defendant's bidding. We do not minimize the weight of Puglia's testimony. Yet, if the jury had a reasonable doubt about the truth of Graves's testimony, that might have tainted Puglia's testimony as well. Defendant's recorded statement may well have been just talk, reflecting his satisfaction that Mosley met his demise.

Analysis of the prejudice prong should await an evidentiary hearing, at which the strength of the proposed testimony of the absent witnesses could be weighed.

A-4915-16T2

### III.

In sum, we affirm in part and reverse in part. We remand for a hearing on the issue of trial counsel's failure to call the five witnesses; and remand for a hearing on whether defendant waived by conduct his assertion of the right to represent himself. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4915-16T2