# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5372-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CARDELL BOYD,

    Defendant-Appellant.

_____

Submitted June 25, 2019 – Decided September 17, 2019

Before Judges Rothstadt and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Accusation No. 13-07-2228.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Linda Anne Shashoua, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Cardell Boyd appeals from the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. On appeal, defendant argues that the PCR judge should have ordered an evidentiary hearing. According to defendant, he established a prima facie case of ineffective assistance of counsel (IAC) based upon his plea counsel's failure to adequately advise him about Parole Supervision for Life (PSL), N.J.S.A. 2C:43-6.4, and her failing to investigate defendant's cognitive limitations before advising him to accept the plea offer. For the reasons that follow, we vacate the denial of his petition and remand for an evidentiary hearing.

Defendant pled guilty to an Accusation that charged him with third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). Pursuant to his plea agreement, on November 1, 2013, the sentencing judge imposed a 270-day period of jail time, required defendant to comply with the registration requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23, and subjected defendant to PSL.

Prior to entering his plea on July 24, 2013, defendant signed a plea agreement containing a supplement that addressed PSL. By circling "yes" next to each of the PSL-related questions, defendant confirmed that he knew PSL was "in addition to any other sentence," "that upon release from incarceration [he

2

would] be supervised by the Division of Parole for at least [fifteen] years and [would] be subject to provisions and conditions of parole" that may prevent him from living "in a home with minor children," that if he violated PSL he could be incarcerated, and that he could be convicted for any violation of PSL, which could result in an additional sentence being imposed for "up to [eighteen] months."

During defendant's plea hearing, defense counsel confirmed that she "had an opportunity to review the Plea Forms" and defendant "initialed each page and signed the last pages of each section." The plea judge then reviewed the terms of the plea agreement with defendant. The judge stated, among other things, "[y]ou'd have to serve [PSL]" and confirmed that defendant would be placed on PSL "immediately" after sentencing.

The judge also confirmed that defendant read the plea agreement, that it reflected his plea "deal," and that its terms were "written accurately and completely in the plea papers that [defendant] and [his] Attorney filled out." In response to the judge's questioning, defendant acknowledged that he read "through those questions very carefully and check[ed] all the answers." The judge also confirmed with defendant that "after [his] Attorney went over

3

everything with" defendant, he understood and signed the agreement. Defendant also stated that he was satisfied with his lawyer's services.

Prior to being sentenced, defendant was evaluated at the Avenel Adult Diagnostic and Treatment Center (the Center). During his evaluation, he stated that he dropped out of school in the ninth grade but until then he attended regular education classes. He also stated that he was previously medicated for a period of time for depression and anxiety following an earlier arrest. The results of the examination indicated that while defendant was not amenable to sentencing as a sex offender, he was "testing, at best, in the 'Below Average' range of intellectual ability." The report noted that "[n]either speech nor thought processes showed evidence of loose associations, nor other symptomatology that would confirm the presence of a psychologic thought disorder."

At sentencing, PSL was initially mentioned by the prosecutor who clarified that defendant could not be sentenced to probation because he was being placed on PSL. The only other reference to PSL was when the sentencing judge stated defendant was "subject to [PSL]" as part of his sentence.

Defendant did not appeal from his conviction or sentence. However, in July 2016 he filed his first petition for PCR. In his petition, defendant argued that "the terms of PSL were not explained to [him]" and he "was not aware that

4

programs such as Drug Court would be unavailable." A brief and amended petition were later submitted on behalf of defendant in which he expanded upon his earlier argument about plea counsel not "adequately" explaining PSL to him. He also contended he was entitled to an evidentiary hearing and that his petition was not procedurally barred.

In his amended petition, defendant also asserted that he was diagnosed with a learning disability and attended special education classes while in school. He certified that he had been diagnosed with various mental health disorders, including depressive and anxiety disorders, post-traumatic stress disorder, and antisocial personality disorder. He also verified that his plea counsel "advised [him] that [he] had not paid her sufficient money for her to proceed to trial or to conduct any investigations in [the] matter." She also allegedly advised him to either accept the plea or proceed to trial with representation from the Public Defender's Office.

As to his understanding about PSL, defendant stated the following:

> Defense counsel never explained to me about [PSL]. She did not explain that it was a mandatory requirement for the offense that I pled guilty to, and she did not explain that it was one of the conditions of my plea deal. She also did not explain PSL when going over the plea form with me.

> I also did not understand at the time that I accepted the plea deal the requirements or the implications of PSL. The court never explained PSL in a way that I understood. The court only said at the plea hearing that "You'd have to serve parole supervision for life." Therefore, I did not know at the time that I accepted the plea deal that I would be subject to PSL. I learned that I was subject to PSL on the day of sentencing. If I had known that PSL was a condition of my plea deal I would not have accepted it.

On December 15, 2017, the parties appeared before the PCR judge for oral argument. After considering the parties' contentions, on January 11, 2018, the judge denied defendant's petition for the reasons stated in a comprehensive nineteen-page written decision he issued on the same date. In addressing the first prong of the two-pronged test for PCR articulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and as adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), the PCR judge considered defendant's contentions about not being advised of PSL.

The judge cited to State v. Schubert, 212 N.J. 295, 308 (2012) and recognized that "PSL is a direct consequence of a plea; therefore, a defendant must be informed of such consequences." He distinguished defendant's situation from that of the defendant in State v. J.J., 397 N.J. Super. 91, 100 (App. Div. 2007), who despite having signed a plea form disclosing PSL, was found to have not been adequately informed about the effect of PSL that included a prohibition

against the defendant living with "his new wife and her children." The judge determined that defendant here did "not point to a specific consequence of PSL that was not contemplated by the plea agreement, only that he did not know of the existence of PSL as part of his plea agreement."

The PCR judge concluded defendant "was informed that PSL was a condition of his plea" because "the record evidences that [it] was discussed with defendant when he signed his plea form." In reaching that conclusion, the judge relied upon defendant's circling the answers to the questions about PSL on the plea form, his plea counsel's statement that she reviewed the plea form and defendant initialed and signed it, the plea judge having told defendant he would have "to serve [PSL]," and the fact that defendant confirmed the plea form was accurate and that he read it and understood its contents. The judge also cited a reference to PSL that was made during sentencing. The judge stated that although "every minutia of [PSL] was not explained by the [plea] judge . . . [he was] satisfied the [plea] judge engaged in sufficient inquiry to ensure that defendant read and understood the terms of his plea and adequately discussed it with his attorney."

The judge also found that defendant failed to meet the second prong of Strickland, which required defendant to demonstrate there was reasonable

7

probability that but for counsel's deficient performance, the outcome of the proceedings would have been different. He concluded that plea counsel did not commit any professional errors and noted that defendant failed to offer any facts that established he suffered "legal prejudice" by accepting the plea. He found the record showed that defendant entered into the plea agreement "knowingly, intelligently, and voluntarily," and testified that he was satisfied with counsel's representation. He concluded that defendant failed to establish a prima facie case of IAC based on his allegations about PSL.

Turning to defendant's argument that counsel failed to investigate his mental health, the judge observed that defendant did not provide any documentation pertaining to his alleged mental health issues or learning disability. He noted the Center's evaluation did not indicate that defendant had any mental disorders or suffered from a diminished capacity that would impact his ability to understand the proceedings. As such, he found that defendant's allegations about counsel's failure to investigate also failed to meet the first prong of Strickland. This appeal followed.

Defendant presents the following issue for our consideration in his appeal:

> POINT ONE
>
> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT

8

HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO INFORM HIM ADEQUATELY OF THE REQUIREMENTS AND CONSEQUENCES OF PAROLE SUPERVISION FOR LIFE, AND FAILING TO CONDUCT ADEQUATE PRETRIAL INVESTIGATION.

In support of his argument, defendant maintains that he established a prima facie case of IAC because counsel failed to adequately advise him about PSL and by failing to conduct a pretrial investigation into his intellectual limitations. He also avers that the plea and sentencing judges did not give him any information about PSL and merely asserted that he would be subject to it and verified that he read the forms. Defendant contends that the PCR judge only relied upon the plea forms and that defendant was informed at sentencing about PSL in rendering his decision. We find defendant's contentions relating to not being informed about PSL to have merit.

When a defendant's PCR petition is denied without an evidentiary hearing, our review is de novo because claims of IAC generally give rise to legal issues. State v. Harris, 181 N.J. 391, 419 (2004). "[I]t is within our authority 'to conduct a de novo review of both the factual findings and legal conclusions of the PCR court.'" State v. Reevey, 417 N.J. Super. 134, 147 (App. Div. 2010) (quoting Harris, 181 N.J. at 421).

Applying our de novo standard of review, we conclude that the PCR judge incorrectly decided defendant's petition without conducting an evidentiary hearing because there were no facts in the record establishing that plea counsel ever discussed PSL with defendant and that neither the plea judge's nor the sentencing judge's comments about PSL provide any information about the consequences of PSL.

In order to prevail on a claim of IAC, defendant must establish both: (l) counsel's performance was deficient and she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

The Strickland two-pronged analysis applies equally to convictions after a trial or after a defendant pleads guilty. In the context of a PCR petition challenging a guilty plea, the second Strickland prong is satisfied when a defendant establishes that "there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial." State v. Gaitan, 209 N.J. 339, 351 (2012) (quoting State v.

Nuñez-Valdéz, 200 N.J. 129, 139 (2009)). A defendant who claims ineffective assistance of plea counsel must also show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010); see also State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

Merely raising a claim of PCR does not establish a prima facie claim of IAC that would support granting a defendant an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). A defendant is entitled to an evidentiary hearing "if he or she establishes a 'prima facie case in support of post-conviction relief,' there are 'material issues of disputed fact that cannot be resolved by reference to the existing record,' and a 'hearing is necessary to resolve the claims for relief.'" State v. Rose, 458 N.J. Super. 610, 624 (App. Div. 2019) (quoting R. 3:22-10). These facts must be viewed in the light most favorable to the defendant. State v. Preciose, 129 N.J. 451, 462-63 (1992).

PCR petitions must be "accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity the facts that he wished to present." State v. Jones, 219 N.J. 298, 312 (2014). "Even a suspicious or questionable affidavit supporting a PCR petition 'must be tested for credibility and cannot be summarily rejected.'" Id. at 314 (quoting State v. Porter, 216 N.J.

11

343, 355 (2013)). There are "[c]ertain factual questions, 'including those relating to the nature and content of off-the-record conferences between defendant and [the] trial attorney,' [which] are critical to claims of ineffective assistance of counsel and can 'only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility.'" Porter, 216 N.J. at 355 (quoting State v. Pyatt, 316 N.J. Super. 46, 51 (App. Div. 1998)).

In his supporting affidavit, defendant contends that neither his attorney nor the plea judge adequately advised him about PSL. As the PCR judge acknowledged, defendant was entitled to be properly advised about PSL before his plea was accepted.

"[T]he determination of whether defendant must be informed of certain consequences of his plea turns on whether those consequences are 'direct or penal,' in which case the defendant must be informed, or 'collateral,' in which case defendant need not be informed." State v. Bellamy, 178 N.J. 127, 137 (2003) (quoting State v. Heitzman, 209 N.J. Super. 617, 622 (App. Div. 1986)). The consequences of PSL are penal in nature and as such, a defendant must be informed of them. See N.J.S.A. 2C:43-6.4(b); State v. Perez, 220 N.J. 423, 441 (2015). A defendant may not fully understand "the parameters of [a] plea" if neither the court nor counsel explains the ramifications of PSL. J.J., 397 N.J.

12

Super. at 99-100.  With more knowledge of the consequences of a plea, a defendant can make a more informed decision regarding accepting the plea.  Id. at 100.

We have previously observed that before accepting a plea, a "court should at least assure itself that defense counsel has discussed the matter with his client and defendant understands the nature of community [or parole] supervision for life as the functional equivalent of life-time parole."  State v. Jamgochian, 363 N.J. Super. 220, 227 (App. Div. 2003).  Specifically, "[i]f the trial court is aware that a particular aspect of a penal consequence needs clarification then it should take the time to explain further" particularly because life-long parole supervision "can have a greater deleterious effect on the defendant than the actual period of incarceration."  Ibid.  "Whereas the court need not explain every possible consequence of a plea, it cannot simply utter a label such as '[PSL] requirements.'  Such a disclosure does not ensure that defendant fully understands the parameters of his plea."  J.J., 397 N.J. Super. at 99 (citation omitted).  The obligation to ensure that counsel has discussed PSL with a defendant before he enters a plea, and defendant understands its consequences, is not satisfied by "solely rely[ing] on a written plea form when taking a plea."

13

State v. Williams, 342 N.J. Super. 83, 91 (App. Div. 2001) (citing State v. Kovack, 91 N.J. 476, 484 n.1 (1982)).

Applying these principles, we conclude defendant established a prima facie claim of IAC and was entitled to an evidentiary hearing on the issue of whether he was adequately informed by counsel about the consequences of PSL and if he was not, whether he would not have accepted the plea offer if he had been properly advised.

We reach a different conclusion as to defendant's contentions about counsel's failure to investigate his alleged cognitive impairments. We find defendant's contention in that regard to be without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), and we affirm substantially for the reasons stated by the PCR judge. Suffice it to say, there was nothing in the record to support defendant's claim as to this contention.

Affirmed in part; reversed in part and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14